# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: October 8, 2025

```
* * * * * * * * * * * * * *   *
ALEXZANDER ROSE,               *
                               *
            Petitioner,        *      No. 17-1770V
                               *
v.                             *      Special Master Young
                               *
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *
                               *
            Respondent.        *
* * * * * * * * * * * * * *   *
```

*Mark Theodore Sadaka*, Law Offices of Sadaka Associates, LLC, Englewood, NJ, for Petitioner.
*Meghan Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On June 10, 2025, Alexzander Rose ("Petitioner") filed a motion for attorneys' fees and costs, requesting **$42,840.60** for the work of his counsel. Pet'r's Mot., ECF No. 99. This amount consists of $28,590.60 in fees and $14,250.00 in costs. *Id.* On June 24, 2025, Respondent filed his response and objection to Petitioner's motion. Resp't's Response, ECF No. 100. In his response, Respondent stated his opposition, asserting that "Petitioner's claim lost reasonable basis during the pendency of his claim," identifying either June 21, 2021, or September 29, 2023, as the dates Petitioner's claim may have lost reasonable basis. *Id.* at 10. Petitioner filed a reply brief on July 1, 2025, and additional authority to support his position on September 2, 2025. Pet'r's Reply, ECF No. 101; Pet'r's Supp. Auth., ECF No. 103. For the reasons stated below, I find that Petitioner's claim had reasonable basis throughout the pendency of his claim, and he is therefore entitled to fees and costs for the entirety of his claim.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

## I.    Procedural History[2]

On November 13, 2017, Denise Sheffield-Rose and Mark Rose filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program")[3] on behalf of their then-minor son Alexzander Rose.[4] Pet., ECF No. 1. Petitioners alleged the human papillomavirus ("HPV") vaccine Petitioner received on March 30, 2015, caused him to suffer from alopecia areata ("AA"). *Id.* Petitioners filed medical records on November 14, 2017. Pet'r's Exs. 1–11, ECF Nos. 5–6. Petitioners filed two affidavits and a statement of completion on January 11, 2018. Pet'r's Exs. 12–13, ECF Nos. 14–15.

On April 19, 2018, Respondent filed his Rule 4(c) Report, recommending that compensation be denied. Resp't's Report, ECF No. 19. Petitioners submitted additional medical records on May 24, 2018, and June 11, 2018. Pet'r's Ex. 14, ECF No. 21; Pet'r's Ex. 15, ECF No. 22. On August 14, 2018, Petitioners filed an expert report from M. Eric Gershwin, M.D., M.A.C.P., M.A.C.R. as well as his curriculum vitae ("CV") and accompanying medical literature. Pet'r's Ex. 16, ECF No. 29; Pet'r's Exs. 27–97, ECF Nos. 31–37; Pet'r's Ex. 98, ECF No. 38. Petitioners filed additional medical literature on August 15, 2018. Pet'r's Exs. 17–26, ECF No. 41.

Respondent filed expert reports and CVs from Arnold I. Levinson, M.D., and Maryanne Makredes Senna, M.D., on May 8, 2019. Resp't's Exs. A–D, ECF No. 47. On March 9, 2020, Respondent filed a supplemental expert report from Dr. Levinson and the accompanying medical literature. Resp't's Ex. E, ECF No. 63; Resp't's Ex. C, Tabs 1–61, ECF Nos. 57–62. Petitioners filed a responsive expert report from Dr. Gershwin on March 27, 2020. Pet'r's Ex. 99, ECF No. 64. Petitioners submitted additional medical literature on March 30, 2020. Pet'r's Exs. 100–05, ECF No. 65.

On April 30, 2020, Respondent filed a second supplemental expert report from Dr. Levinson. Resp't's Ex. F, ECF No. 66. Petitioners filed a responsive supplemental expert report from Dr. Gershwin, along with accompanying medical literature, on September 14, 2020. Pet'r's Ex. 106, ECF No. 68; Pet'r's Exs. 107–15, ECF No. 69. Respondent filed additional medical literature on October 20, 2020. Resp't's Ex. A, Tabs 1–14, ECF Nos. 70–71. Respondent filed a third responsive supplemental expert report from Dr. Levinson on December 11, 2020. Resp't's Ex. G, ECF No. 75. Petitioners filed a final supplemental expert report from Dr. Gershwin and medical literature on June 25, 2021. Pet'r's Ex. 116, ECF No. 77; Pet'r's Exs. 117–23, ECF No. 78. Respondent filed an expert report from Emanual Maverakis, M.D., on March 27, 2023. Resp't's Ex. H, ECF No. 86. On February 5, 2024, Petitioners filed a motion for ruling on the record. Pet'r's Mot., ECF No. 92. Respondent filed his response on March 4, 2024; Petitioners

---

[2] Although Alexzander Rose is the captioned Petitioner as of January 24, 2025, prior to that date, his parents served as Petitioners on his behalf and were responsible for all filings. Therefore, throughout the procedural history section of this decision, Mark Rose and Denise Sheffield-Rose will be referred to as Petitioners to indicate that they completed the record while the captioned Petitioner, Alexzander Rose, was still a minor. Alexzander Rose is the designated Petitioner in all other sections of this decision.

[3] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755 ("the Vaccine Act" or "Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[4] On January 24, 2025, the case caption was amended to reflect Petitioner's adult status. ECF No. 95.

replied on March 18, 2024. Resp't's Response, ECF No. 93; Pet'r's Reply, ECF No. 94. Petitioner reached the age of majority on November 15, 2019, and the caption was amended on January 24, 2025. ECF No. 95.

On March 20, 2025, I issued a decision in this case, ruling against compensation for Petitioner. ECF No. 96. On June 10, 2025, Petitioner filed a motion for attorneys' fees and costs. Pet'r's Mot. Respondent filed a response objecting to Petitioner's motion on June 24, 2025. Resp't's Response. Petitioner filed a reply on July 1, 2025, and filed additional authority on July 22, 2025. Pet'r's Reply; Pet'r's Supp. Auth. This matter is now ripe for consideration.

## II.    Relevant Medical History

Petitioner was born on November 15, 2001. Pet'r's Ex. 3 at 1. On August 28, 2014, Petitioner was seen at Pediatric Health Care Alliance ("PHCA") for his annual health maintenance examination. *Id.* at 7–9. He received a Tdap booster and his first HPV (Gardasil) and meningococcal vaccinations during this visit. *Id.* at 5. Petitioner returned to PHCA on November 3, 2014, and March 30, 2015, to receive his second and third HPV vaccinations. *Id.* at 38, 1.

Almost three months later, on June 12, 2015, Petitioner presented to Florida Acupuncture Solutions with a chief complaint of hair loss and allergies. Pet'r's Ex. 1 at 20. According to the visit notes, Ms. Sheffield-Rose noticed several bald spots on Petitioner's scalp after a haircut two weeks prior, but she had not noticed any hair loss after previous haircuts. *Id.* There was no history of stress or physical or emotional trauma, and the cause of Petitioner's hair loss was unclear. *Id.* Assessment notes indicated alopecia and a plan to administer a B12 injection. *Id.* Lab tests performed on June 16, 2015, for thyroid stimulating hormone ("TSH") levels, thyroglobulin antibodies, and thyroid peroxidase antibodies were unremarkable. Pet'r's Ex. 4 at 10.[5] Petitioner returned to Florida Acupuncture Solutions on June 29, 2015, July 3, 2015, July 14, and July 20, 2015, complaining of hair loss and allergies. Pet'r's Ex. 1 at 16–19, 22. Each visit noted alopecia under the assessment section. *Id.*

On July 15, 2015, Petitioner saw dermatologist Philip Barton, M.D., at Ocala Dermatology for AA on the scalp. Pet'r's Ex. 5 at 3. The history of present illness section noted that Petitioner "complained of hair loss that [was] multifactorial and moderate in severity." *Id.* Additional section notes indicated that Petitioner was using Clobetasol and Rogaine and had been given a Kenalog injection four weeks prior. *Id.* Petitioner reported some hair regrowth to Dr. Barton. *Id.* On examination, Petitioner had "discrete, round, smooth to slightly shiny, alopecic patches" on the scalp. *Id.* Dr. Barton injected one lesion with Kenalog. *Id.* Petitioner was advised to contact Dr. Barton's office if his alopecia did not improve or if it worsened despite treatment. *Id.* On August 12, 2015, Petitioner visited with Ocala Dermatology to follow up on his AA. *Id.* at 1. Dr. Barton administered another Kenalog injection. *Id.*

---

[5] On June 22, 2015, Petitioner presented to Murray Hill Dermatology. Pet'r's Ex. 6 at 1. Visit notes were illegible; however, Respondent's brief stated that Petitioner "was assessed with alopecia areata ("AA") with hair loss on the scalp, but good hair in the eyebrows, eyelid, axilla, and pubic area." Resp't's Response at 4 (citing Pet'r's Ex. 6 at 3).

On September 10, 2015, Petitioner presented to All Pediatrics complaining of AA that started in May 2015. Pet'r's Ex. 4 at 5–6. Visit notes showed that Petitioner reported receiving scalp steroid shots at New York City Dermatology and was given steroid lotions.[6] *Id.* at 6. Assessment notes listed the diagnosis as "alopecia totalis." *Id.* Petitioner was encouraged to follow up with dermatology for alopecia treatments. *Id.* Additional notes also showed that Petitioner had sought a referral to "USF" for further evaluation and treatment.[7] *Id.*

Office notes from a February 8, 2016, visit to Pediatric Health Care Alliance referenced Petitioner's mother's statement that he received treatment at "NYU"[8] for alopecia, and that all testing was normal. Pet'r's Ex. 3 at 36. He was offered a referral for further treatment of his alopecia. *Id.*

### III.    Reasonable Basis Determination

#### a.    Standards of Review

To obtain attorneys' fees pursuant to a Vaccine Act claim, the petitioner must have a reasonable basis to support all elements of the claim for which the petition is brought, including causation. *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1345–46 (Fed. Cir. 2020) (citing 42 U.S.C. §§ 300aa11(c)(1), 300aa-15(e)(1)). An analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *6–7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 283 (2014). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham*, 971 F.3d at 1346 (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert and clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion"). Indeed, determining what constitutes "more than a mere scintilla" is a "daunting task." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 15-1291V, 2021 WL 3085502, at *13 (Fed. Cl. Spec. Mstr. July 21, 2021).

While the Court in *Cottingham* did not purport to identify all forms of objective evidence reflective of reasonable basis, it stated that "objective medical evidence, including medical records . . . even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Cottingham*, 971 F.3d at 1346 (citing *Harding v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 381, 403 (2019)). The *Cottingham* Court also reiterated that the

---

[6] Petitioner did not submit records from the New York City dermatology visit.

[7] Neither Petitioner nor the medical records further clarified "USF," and no medical records from "USF" were filed. It is unclear if Petitioner was seen at USF or by any other dermatologist.

[8] Neither Petitioner nor the medical records further clarified "NYU," and no medical records from "NYU" were filed.

reasonable basis determination is still based on a "totality of the circumstances." *Cottingham*, 971 F.3d at 1346.

In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379–81 (Fed. Cir. 2021). The Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham*, 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994) holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). If reasonable basis is lost, "[p]etitioners' counsels have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham v. Sec'y of Health & Hum. Servs.*, 134 Fed. Cl. 567, 574 (2017) (citing *Perriera*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Hum. Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Hum. Servs.*, 128 Fed. Cl. 724, 727 (2016)).

### b. Parties' Arguments

#### 1. Respondent

Respondent stated his opposition to Petitioner's motion, asserting this claim lacks a reasonable basis because "the very same theory of injury in this case espoused by [P]etitioner's expert Dr. Gershwin was found to be unreliable by this Court as early as 2021." Resp't's Response at 1. Specifically, Respondent highlighted that the theory presented by Dr. Gershwin in the present case, molecular mimicry, had previously been rejected by Chief Special Master Corcoran in *Cordova*. *Id.* at 8; *see also Cordova v. Sec'y of Health & Hum. Servs.*, No. 17-1282V, 2021 WL 5985537, at *16–18 (Fed. Cl. Spec. Mstr. Nov. 22, 2021). Respondent relied on a portion of Chief Special Master Corcoran's reasoning where he stated, "the causation theory offered in this case is otherwise not supported by sufficient reliable evidence to make a finding that the HPV vaccine 'more likely than not' could instigate/trigger AA." *Cordova*, 2021 WL 3285367, at *16.

Respondent also pointed to my previous decision in *Farag*, where I held that there was not sufficient evidence to satisfy the preponderance of the evidence standard required for an entitlement ruling. *Farag v. Sec'y of Health & Hum. Servs.*, No. 17-714V, 2024 WL 5378009, at *20–23 (Fed. Cl. Spec. Mstr. Dec. 6, 2024). Respondent pointed to my discussion of Dr. Gershwin's use of Tu et al. and stated I "found this paper to be flawed and unsupportive of an

association between HPV and AA." Resp't's Response at 9 (citing *Farag*, 2023 WL 7203034, at *23). Accordingly, Respondent contended that "this claim lost reasonable basis after the *Cordova* and *Farag* decisions made clear that [P]etitioner's theory of causation, and thus this case, lacked merit." *Id.* Respondent contended that despite these rulings, Petitioner never filed additional supporting evidence and continued to present a theory, based upon the same evidence, which had previously been dismissed twice in the Program, and thus had lost reasonable basis on either June 21, 2021 (when *Cordova* was decided), or September 29, 2023 (when *Farag* was decided).

### 2. Petitioner

Petitioner asserted that he had a reasonable basis to file this claim based on medical records, affidavits, and the opinion of Petitioner's expert, Dr. M. Eric Gershwin.

First, Petitioner argued that previous decisions issued by myself and Chief Special Master Corcoran against Petitioner's current counsel, Mark Sadaka, and expert Dr. Gershwin did not preclude a finding of reasonable basis. Pet'r's Reply at 2. He noted that although the petitioners' entitlement to compensation was denied in both cases, attorneys' fees and costs were still awarded to Petitioner's counsel and Dr. Gershwin. *Id.* In *Cordova*, Chief Special Master Corcoran held that "[a]lthough Petitioner did not succeed on his claim . . . AA is unquestionably an autoimmune disease, and . . . it has been found in other reasoned cases to be vaccine-caused (and by the causal mechanism proposed in this case)." *Cordova*, 2021 WL 3285367, at *2. Similarly, in *Farag*, Petitioner highlighted that although I denied the petitioner's compensation in September 2023, I found there to be reasonable basis and awarded attorneys' fees & costs in December 2024. *Farag*, 2024 WL 5378009, at *1. Petitioner also noted that in *Farag*, the case involved "the same expert (Dr. Gershwin), the same theory (HPV vaccine-induced AA via immunological response), and the same counsel." Pet'r's Reply at 2. Accordingly, Petitioner argued that at no point during the case did they lose reasonable basis due to the filing of the opinions in either *Cordova* or *Farag*, and, if anything, the prior awards of attorneys' fees and costs provided further support that Petitioner's current claim of vaccine-induced AA had reasonable basis.

Second, Petitioner relied on the decision in *Rogan*, where Mr. Sadaka advanced the same theory of HPV vaccine-induced alopecia with the same expert, but filed additional medical literature to further explain "the immunological mechanism of cytotoxic CD8+ T cell generation through memory T-cell pathways." Pet'r's Reply at 3. The special master in that case ruled in favor of the petitioner based off this theory. *See Rogan v. Sec'y of Health & Hum. Servs.*, No. 17-1916V, 2025 WL 2754734 (Fed. Cl. Spec. Mstr. Sept. 2, 2025). Accordingly, Petitioner argues that in the present case this demonstrates the medical theory advanced by Dr. Gershwin does not alone preclude a finding of reasonable basis, given its documented acceptance in the Program. Pet'r's Reply at 3; *see generally*, Pet'r's Supp. Auth.

Third, Petitioner asserted that objective evidence supported reasonable basis for all five statutory elements of his claim. Pet'r's Reply at 3. In his reply brief, Petitioner addressed each element, noting that (1) the HPV vaccine is covered by the Program; (2) the vaccination occurred in the United States; (3) contemporaneous records document onset of AA within weeks; (4) Petitioner's condition progressed to alopecia totalis, meeting the six-month severity requirement; and (5) no prior award or civil settlement exists. *Id.* at 3–4. Petitioner also asserted that Dr.

Gershwin's expert opinion remained relevant throughout the case, as it was tailored to the specific facts of Petitioner's case and "[r]easonable basis is inherently fact specific." *Id.* at 4.

Therefore, according to Petitioner, given the totality of the circumstances and specifically that the special masters in *Cordova, Farag,* and *Rogan* all found at least reasonable basis as it pertained to the medical theory advanced by Dr. Gershwin, Petitioner had a reasonable basis to pursue his claim. Pet'r's Reply at 5.

### IV.    Reasonable Basis Analysis

After careful review of the record, I find that Petitioner satisfied the reasonable basis requirement when the claim was filed on November 13, 2017, and that Petitioner maintained this reasonable basis throughout the pendency of his claim.

Here, Respondent's objection to reasonable basis is that Petitioner's theory of causation had been found to not satisfy the preponderance of the evidence standard on two prior occasions during the pendency of his claim Thus, his claim lost reasonable basis when these decisions were issued. However, Respondent is incorrectly conflating the standard for entitlement (preponderance of the evidence) with the standard for attorneys' fees and costs (reasonable basis). As has been observed *ad nauseum* in the Program, "more than a mere scintilla **but less than** a preponderance of the evidence of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham*, 971 F.3d at 1346 (emphasis added). This does not require petitioners to prove their claim by preponderant evidence, much less require petitioners to point to prior Program precedent to justify the filing of their claim. Rather, it only requires a petitioner to provide objective evidence showing a reasonable basis for all elements of their claim. *Cottingham*, 971 F.3d at 1344.

In the present case, Petitioner has provided sufficient objective evidence to satisfy the reasonable basis standard. First, the finding of reasonable basis is a fact-specific inquiry, and after a review of Petitioner's medical records, there appears to be sufficient objective evidence to support a reasonable basis for causation. Petitioner's diagnosis of alopecia totalis, prior receipt of the HPV vaccine, and proposed medical theory of molecular mimicry provide reasonable objective evidence to support causation given the Program's history of recognizing the relationship between HPV and AA in certain cases using the same biomechanical theory. *See Cordova*, 2021 WL 5985537, at *2 (acknowledging that "[a]lthough Petitioner did not succeed on his claim . . . AA is unquestionably an autoimmune disease, and . . . it has been found in other reasoned cases to be vaccine-caused (and by the causal mechanism proposed in this case)").

Second, it is persuasive that in both of the cases relied on by Respondent, myself and Chief Special Master Corcoran both found reasonable basis for the claims *despite* not ruling in favor of compensation for the petitioner. As explained above, this is not a remarkable occurrence in the Program where the burden for establishing an award of attorneys' fees and costs is lower than the burden to establish entitlement to compensation. In fact, this structure was explicitly created to allow for petitioners to have access to a competent bar of attorneys even if they bring a claim that may appear to be reasonable, but does not prevail in the Program. *See Sebelius v. Cloer*, 569 U.S. 369, 370 (2013) (explaining that the Program's intent to award compensation is also meant to assist

a petitioner's "ability to obtain qualified assistance by making fees awards available for non-prevailing, good-faith claims").

Third, Petitioner's reliance on the recent decision in *Rogan* is valid, given that the petitioner there was successful using the same counsel, expert, and theory of causation for a similar injury as Petitioner in the present case. Although such determinations of reasonable basis are case-specific, it is notable that another special master did in fact find for the petitioner under these circumstances when Respondent's central argument here is that the theory of causation advanced by Petitioner in this case has been rejected by the Program, and thus lacks reasonable basis. *See generally* Resp't's Response. It is also noteworthy that Respondent does not focus on the specific facts of Petitioner's case to show a lack of reasonable basis, but rather instead relies solely on the fact that prior decisions have not ruled in support of Dr. Gershwin's proposed medical theory.

Accordingly, I find reasonable basis existed at the time of the filing of Petitioner's claim and that reasonable basis was not lost at any point during the pendency of Petitioner's claim. Accordingly, Petitioner is entitled to attorneys' fees and costs.

## V.     Reasonable Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate.'" *Id.* at 1347–48. (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

A special master need not engage in a line-by-line analysis of Petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011). It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.,* 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.") Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. CL. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### a.  Hourly Rates

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at \*19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules can be accessed online.[9]

Petitioner requests the following rates for the work of his counsel, Mr. Sadaka: $422.00 for work performed in 2020; $444.00 for work performed in 2021; $458.00 for work performed in 2022; $482.00 for work performed in 2023; $532.00 for work performed in 2024; and $627.00 for work performed in 2025. Petitioner also requests the following rates for paralegal work: $163.00 for 2020; $172.00 for 2021; $177.00 for 2022; $186.00 for 2023; $197.00 for 2024; and $212.00 for 2025.

I find these rates are largely consistent with what Mr. Sadaka has been awarded previously for his Vaccine Program work, and I find the rates from 2020 to 2024 to be reasonable. I also find the paralegal rates from 2020 to 2025 to be reasonable and consistent with the OSM Attorneys' Forum Hourly Rate Fee Schedule for 2025, and thus will award these rates in full. However, a reduction for Mr. Sadaka's 2025 rate is necessary. Mr. Sadaka's request for $627.00 per hour is outside the range for attorneys with 20-30 years of experience. Given Mr. Sadaka's experience and similar reductions from other special masters, I find $562.00 per hour to be a reasonable and appropriate rate for work performed by Mr. Sadaka in 2025. *See Tirone v. Sec'y of Health & Hum. Servs.*, No. 18-869V, 2025 WL 2659088, at \*2 (Fed. Cl. Spec. Mstr. Aug. 21, 2025) (reducing Mr. Sadaka's 2025 rate from $627.00 to $562.00 due to a lack of experience). Accordingly, this results in a reduction of $422.50.[10]

### b. Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434). It is well-established that billing for administrative or clerical tasks is not permitted in the Vaccine Program. *See e.g.*, *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.*, No. 94-770, 2001 WL 101459, at \*2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at \*5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (failing to award fees for the review of CM/ECF notifications and organization of the file); *McCulloch*, 2015 WL 5634323, at \*26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them).

---

[9] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.
[10] ($627.00 - $562.00) x 6.5 = $422.50.

Upon review of the submitted billing records, I find the time billed to be accurately representative of and consistent with the types of tasks that are typically awarded in the Program. Accordingly, Petitioner is awarded attorneys' fees in the amount of $28,168.10.[11]

### c.  Costs

Similar to attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreria v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Regarding expert fees, "[t]he question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so." *Baker v. Sec'y of Health & Hum. Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (quoting *Wasson v. Sec'y of Health & Hum. Servs.*, No. 90-208V, 1991 WL 135012, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded*, 24 Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.3d 131 (Fed. Cir. 1993)). An expert retained by petitioners in the Vaccine Program will only be compensated at a reasonable hourly rate, and petitioners have the burden of demonstrating that the expert costs incurred were reasonable. *Smith v. Sec'y of Health & Hum. Servs.*, No. 18-0043V, 2020 WL 1243238, at *9 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) (citing *Ceballos v. Sec'y of Health & Hum. Servs.*, No. 99-97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004)). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner requests a total of $14,250.00 in attorneys' costs. This amount is entirely comprised of fees for expert services provided by Dr. Gershwin. *See* Fee Mot., Tab A at 11.

Fees for experts are subject to the same reasonableness standard as fees for attorneys. *Baker v. Sec'y of Health & Hum. Servs.*, 99-653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005). Dr. Gershwin charged an hourly rate of $500.00 per hour for some of his reports, and charged flat rate retainers of $2,500.00 and $3,000 for the preparation of some of his other reports. I do not doubt that Dr. Gershwin had done additional medical research in the process of formulating his reports, however, his lack of billing records makes it near impossible to ascertain the effort put in or to assign a value to those reports charged at a flat rate, which included no hourly rate or breakdown of his time spent. This is not standard practice in the Vaccine Program where experts are subject to the same requirements as attorneys in order to receive compensation. Other special masters have warned Dr. Gershwin for his lack of clear billing. *See, e.g.*, *Edwards v. Sec'y of Health & Hum. Servs.*, No. 16-668V, 2019 WL 4911060, at *2, n.5 (Fed. Cl. Spec. Mstr. Sept. 27, 2019); *Perez v. Sec'y of Health & Hum. Servs.*, No. 15-331V, 2019 WL 2487886, at *2 (Fed. Cl. Spec. Mstr. May 16, 2019); *Tacoma v. Sec'y of Health & Hum. Servs.*, No. 16-1604V, 2020 WL 4578584, *2 (Fed. Cl. Spec. Mstr. July 8, 2020). Given the lack of hourly billing, I cannot assess whether Dr. Gershwin should be awarded what he requests. Both Dr. Gershwin and Mr. Sadaka have also been warned previously that Dr. Gershwin's practices do not comport with the Court's standards. *See Edwards*, 2019 WL 4911060, at *2.

---

[11] $28,590.60 - $422.50 = $28,168.10.

Accordingly, I will not award Dr. Gershwin's requested flat-rate retainer fees, but I will award his hourly fees. This results in a reduction of $5,500.00,[12] and a total award of $8,750.00.[13]

### VI.   Conclusion

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2018), I award Petitioner the following in final attorneys' fees and costs:

**For Mark Sadaka at Law Offices of Sadaka Associates, LLC**

| | |
|---|---|
| Final Attorneys' Fees Requested | $28,590.60 |
| (Reduction) | -$422.50 |
| **Final Attorneys' Fees Awarded** | **$28,168.10** |
| | |
| Final Costs Requested | $14,250.00 |
| (Reduction) | -$5,500.00 |
| **Final Costs Awarded** | **$8,750.00** |
| **Total Amount Awarded** | **$36,918.10** |

**Accordingly, I award a lump sum in the amount of $36,918.10, representing reimbursement for Petitioner's attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court SHALL ENTER JUDGMENT in accordance with the terms of the above decision.[14]

**IT IS SO ORDERED.**

s/Herbrina D. S. Young
Herbrina D. S. Young
Special Master

---

[12] $3,000.00 + $2,500.00 = $5,500.00.

[13] $14,250.00 - $5,500.00 = $8,750.00.

[14] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to see review.